## Case No. 14,443.

### UNITED STATES v. AMORY.

[5 Mason, 455.] [1]

Circuit Court, D. Massachusetts. May Term, 1830.

INSOLVENCY—PRIORITY OF UNITED STATES—SURETIES.

Where there is a general assignment of a debtor's property, for the benefit of creditors, and the priority of the United States attaches, they having various debts due by bonds, with different

[1] [Reported by William P. Mason, Esq.]

sureties, all payments made by the assignees are to be applied pro rata to all the debts of the United States; and the latter are not at liberty to apply the payments in any other manner, without the consent of all the parties in interest.

[Cited in brief in U. S. v. Lewis, Case No. 15,-595.]

In equity.

Mr. Dunlap, U. S. Dist. Atty.

F. G. Loring, for Dexter and Holbrook & Dexter.

Mr. Merrill and Samuel Hubbard, for Daniel Appleton.

William Sullivan, for Jonathan Amory.

STORY, Circuit Justice. The present bill in equity is an amicable suit brought against Jonathan Amory, Jr., surviving assignee of the firm of Jonathan Amory & Jonathan Amory, Jr., as assignees of Messrs. Adams & Amory, for an account, and to compel satisfaction of certain debts due to the United States, for which the United States have a right of priority of payment, out of the funds in the hands of the assignees. Messrs. Adams & Amory became insolvent in May, 1826, and on the 25th of that month made an assignment of their property and effects to certain persons, for the payment of their creditors, and these persons having declined, the Messrs. Amory, the defendants in the bill, succeeded to the trust. There is no difficulty on the part of the assignees, in rendering an account of the monies received by them; and they have already paid into court the sum of $20,433.60, which is all that at present they can properly account for, there being still some outstanding claims in litigation. The real question is, in what manner the sum so paid in, shall be appropriated by the court towards satisfaction of the debts due to the United States, the same having arisen from various custom-house bonds, on which there are various sureties, who have an interest in the appropriation. The assignees alone are regularly before the court, as parties; but all the sureties having consented to be bound by such decree as the court may make, and having desired a final settlement of the question, and the district attorney having agreed to that course, I have thought it my duty to proceed to make such a decree, especially as the point is raised in the answer of the assignees. The assignment of Messrs. Adams & Amory, after reciting that it is made to secure certain creditors, indorsers, sureties, and guarantors, for their debts and liabilities, conveys all their estate and effects &c. to the assignees for sale, and after deducting charges and expenses, to apply the proceeds, first, to the payment of certain preferred debts and liabilities, mentioned in a schedule annexed to it, pari passu; and afterwards to all other creditors, &c. pari passu; and the surplus, if any, to hold in trust for the assignors. And the further usual powers are given to the assignees. It is observable that no notice whatsoever is taken in this instrument of debts due to the United States; but it being the intention of the parties that all custom-house bonds should be paid before any debts due to private creditors, a supplemental instrument to that effect was drawn up and executed on the 2d of June following, and was signed by all the parties who had previously signed the original assignment, except one, who is not understood to dissent from it. On the 6th of the same month, the defendants were in due form substituted as assignees.

At the time of their failure, Messrs. Adams & Amory were indebted to the United States upon custom-house bonds, upwards of $92,500, and upon these bonds there were various sureties. All of these bonds became due after the assignment; and upon the principal part of them, judgments have been obtained by the United States against the principals and sureties, as stated in the bill. Upon some of these bonds, Messrs. Holbrook & Dexter, and others, were sureties; upon others, Daniel Appleton was also surety; and upon others, some persons whom it is not now necessary to particularize. Judgments appear to have been obtained upon bonds, where Appleton was a surety to the amount of $16,576.50; and where Holbrook & Dexter and others, or Thomas A. Dexter and others, were sureties, to the amount of about $70,000. Appleton has petitioned the court to have so much of the money paid into court, as may be necessary for the purpose, applied in discharge of the bonds upon which he is surety. This was originally resisted by T. A. Dexter, on behalf of himself and others, and he prayed that the fund might be apportioned among all the bonds, pro rata. But it appearing that a balance of about $12,000 is now due from Messrs. Dexter & Co. to Messrs. Adams & Amory, Dexter now assents that Appleton may have a preference to that extent out of the fund, and that the residue only shall be applied pro rata to all the bonds. We are, then, to take the case as one in which all the sureties agree that, to the extent of $12,000, the court may, if it has authority for this purpose, appropriate the amount in discharge of Appleton's suretyship on the custom-house bonds. It is material also, to observe, that the United States do not oppose such an appropriation, with this reserve only, that it shall not compel them to allow the debentures upon any of the bonds, to which the fund shall be so appropriated.

In the first place, as to the authority of the court, I have no doubt, that, sitting in equity, it has a right to restrain the United States from exercising its power in cases of priority injuriously to the sureties upon the various bonds to which that priority applies. Whenever there is a general assignment of all the estate of a debtor, and the United States have various debts secured by various sureties, I conceive, that the aggregate constitutes but a single debt, and that the priority attaches to it as a whole. All payments,

therefore, that are received by the United States under such circumstances, are to be deemed payments upon the whole debt, and they must be applied pro rata to the extinguishment of all. It is not like the case of payment by a debtor, where, he failing to make an appropriation at the time of the payment, the creditor may then appropriate it as he pleases. In cases of assignments and other cases where the right of priority attaches, the provision is in effect, that the fund shall be first applied to the extinguishment of debts due to the United States. But the assignees are to apply the fund generally, not to one particular debt, but to all debts due to the United States. It would be a violation of their duty to apply it to one debt, to the fraud or injury of sureties. If they are to pay generally, without any specification in the assignment of any preference or priority of any particular debt of any creditor, the law deems each debt as equally entitled to be extinguished pro rata; for equality is in such cases equity. The assignor has not trusted the assignees with any authority to create a preference, and the creditor has no right to demand it. He must make payments as the debtor has provided, or as the law upon his omission has appropriated them.

The argument at the bar has gone somewhat farther, and assumed, that the court, in cases of this nature, will undertake to adjust mere equities between the principal and sureties on different bonds, and the creditor. Without saying that the court will never undertake such a duty, it is sufficient to say, that the case must be very special indeed, in which it will interfere against the creditor to adjust equities between different classes of sureties, with which the creditor has no privity or connexion. All that the court will generally do in cases of this nature is, to see that the creditor does not himself misapply the payments. The creditor has nothing to do with the state of the accounts between different sureties, or with cross claims, which they might assert against each other, if they were the principal parties to the suit. And sureties have no right to call upon the creditor to change the general rule of law as to appropriation of payments, merely because it may not work right in respect to their own private claims, with which the creditor has no concern. It is very clear to me, therefore, that in this case the whole fund ought, upon principle, to be applied pro rata in extinguishment of all the priority debts due to the United States. See Favenc v. Bennett, 11 East, 38, 42. But if the parties interested will consent to a different appropriation, there is nothing to prevent this court from carrying any such agreement into effect.

I shall therefore decree, that so far as respects the $12,000, admitted to be due from Dexter & Co. to Messrs. Adams & Amory, the fund now in court to that extent shall, with the consent of the United States, be appropriated to the extinguishment of the bonds and the judgments thereon, for which Appleton is surety, upon his delivering up the debentures, which have been given by the United States, for the draw-back of any of the duties on the goods, for which the same bonds were originally given, or his extinguishing in any other legal manner the same debentures. I wish to add, that it is not to be understood, that the court will exercise any authority, or interfere between different sureties, or adjust any equities between them in respect to the fund, except so far as to direct that the appropriation shall be pro rata in cases where the right of priority attaches. All other arrangements are matters of private consent between the parties and the United States.